## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 22-cv-20265-BLOOM/Otazo-Reyes

NATHALIE SORENSEN,

      Plaintiff,

v.

AMERICAN AIRLINES, INC., *et al.*,

      Defendants.

_____/

### ORDER ON DEFENDANT'S MOTION TO TRANSFER VENUE

**THIS CAUSE** is before the Court upon Defendant American Airlines, Inc.'s ("American Airlines") Motion to Transfer Venue, ECF No. [15] ("Motion"). Plaintiff Nathalie Sorensen ("Plaintiff") filed a Response to the Motion, ECF No. [18], to which Defendant filed a Reply, ECF No. [19]. The Court has carefully reviewed the Motion, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted.

### I.   BACKGROUND

Plaintiff initiated this case against Defendants American Airlines and Thor Zubbriggen-Roy ("Roy") in the Eleventh Judicial Circuit for Miami-Dade County, Florida on December 23, 2021. ECF No [1-2].  On January 24, 2022, American Airlines removed the lawsuit to this Court. ECF No. [1]. In her Complaint, Plaintiff asserts the following claims for relief against Defendant American Airlines: negligence (Count I); vicarious negligence (Count VIII); and gross negligence (Count IX). *Id.* Although Plaintiff asserted claims for relief against Roy that include assault (Count II); battery (Count III); intentional infliction of emotional distress (Count IV); defamation (Count

Case No. 22-cv-20265-BLOOM/Otazo-Reyes

V); false imprisonment (Count VI) and gross negligence (Count VII), Plaintiff voluntarily dismissed Roy from the action with prejudice. *See* ECF No. [26].

In her Complaint, Plaintiff alleges she was a fare-paying passenger aboard American Airlines flight 2575 from Miami, Florida to Dallas, Texas on December 29, 2019 ("Subject Flight"). ECF No. [1-2] ¶ 7. Plaintiff claims that Roy, a flight attendant employed by American Airlines, committed tortious acts and conduct in the course and scope of his employment on board the Subject Flight. *Id.* ¶ 5. Specifically, Plaintiff alleges that, while in business class with her fiancé, she fell asleep and was woken abruptly by Roy who clenched her arm and shook her violently while shouting at her and demanding that she "Wake up right now! Wake up!" *Id.* ¶¶ 7, 8. Plaintiff alleges that Roy also publicly stated and accused Plaintiff of "stealing" the blanket she was using, exclaiming loud enough for everyone to hear "I know you stole this blanket!" *Id.* ¶ 9. Plaintiff's fiancé instructed Roy to stop touching his wife and to get away from her. *Id.* ¶ 10. Roy responded aggressively by stating, "This is my airplane. I am the Head Flight Attendant, and I can touch whoever I want." *Id.* Plaintiff's fiancé tried to reason with the male flight attendant and explain that no one had "stolen" any blanket, and in turn, Roy issued Plaintiff a "Passenger Inflight Disturbance Report" and threatened out loud that Plaintiff "better watch out." *Id.* ¶ 13. The "Passenger Inflight Disturbance Report" was a Federal Aviation Administration warning threatening jail time and a fine. *Id.* ¶ 14. Once the aircraft landed, Roy and other persons employed by and on behalf of American Airlines contacted or caused to be contacted the Dallas-Fort Worth ("DFW") Airport Police for purposes of arresting and detaining Plaintiff. *Id.* ¶16. Upon landing, Plaintiff was escorted off the plane. *Id.* ¶ 17. Approximately six police officers of the DFW Airport Police Department were waiting for Plaintiff at the gate. *Id.* ¶ 17. Plaintiff was detained, during which she described the incident, and was released after a period of time. *Id.* ¶ 18.

Case No. 22-cv-20265-BLOOM/Otazo-Reyes

This is not the first time Plaintiff has litigated the precise claims now before this Court. On July 8, 2020, Plaintiff filed a similar complaint, alleging the identical underlying facts, in a case styled *Nathalie Sorensen vs. American Airlines, American Airlines, Inc., d/b/a American Airlines, American Airlines Group, Inc., d/b/a American Airlines*, Case No. DC-20-09304, in the 14th Judicial District Court, Dallas County, Texas. ("First State Court Action"). *See* ECF No. [15-2]. The First State Court Action was transferred on January 8, 2021, to the 96th Judicial District Court, Tarrant County, State of Texas, and assigned Case No. 048-322772-2 ("Second State Court Action"). *See id.* at 6. Plaintiff amended her complaint and added Roy as a defendant, and subsequently "voluntarily nonsuited" defendant American Airlines. ECF No. [15-3] at 358. During the pendency of the Second State Court Action, the parties engaged in extensive discovery, including depositions of Plaintiff and three eyewitnesses, protective orders were issued, motions to compel discovery were briefed by the parties and ruled upon by the judge, and the parties proposed a scheduling order that was thereafter entered by the court. *See* ECF No. [15-3].

Following Plaintiff's nonsuit of defendant American, defendant Roy removed the action to the United States District Court for the Northern District of Texas, in a case styled *Nathalie Sorensen v. Thor Zurbriggen-Roy,* Case No. 4:22-cv-00056 (N.D. Texas) ("Texas District Court Action"). *See* ECF No. [15] at 5 n. 1. After the Florida lawsuit was filed, Plaintiff filed her motion to dismiss the Texas District Court Action, advising the court that she "no longer desires to prosecute her claims against Defendant THOR ZURBRIGGEN-ROY in this venue and requests that the Court dismiss" the claims. ECF No. [18-8]. On April 22, 2022, the court entered an order of dismissal of the Texas District Court Action. [1]

---

[1] The Court takes judicial notice of the proceedings and the filings in the First and Second State Court Actions, as well as those in Texas District Court Action. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1277 (11th Cir. 1999) (court may take judicial notice of public filings "for the purpose of determining what

Defendant now seeks to transfer this action to the United States District Court for the Northern District of Texas, arguing that the procedural and material facts in this case weigh strongly in favor of transfer. *See generally* ECF No. [15]. Plaintiff responds that her choice of forum is entitled to considerable deference, the convenience of the parties and witnesses, location of sources of proof, locus of operative facts, ability of process to compel the attendance of unwilling witnesses, trial efficiency, and the interest of justice weigh against transfer. *See generally* ECF No. [18].

## II.    LEGAL STANDARD

The transfer statute, 28 U.S.C. § 1404(a), which embodies a codification and revision of the *forum non conveniens* doctrine, *see Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981), provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Congress authorized courts to transfer the venue of a case in order to avoid unnecessary inconvenience to the litigants, witnesses, and the public, and to conserve time, energy, and money." *Cellularvision Tech. & Telecomms., L.P. v. Alltel Corp.*, 508 F. Supp. 2d 1186, 1188-89 (S.D. Fla. 2007) (citing *Mason v. Smithkline Beecham Clinical Lab'ys*, 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001)). Indeed, "Section 1404(a) reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). The standard for transfer grants broad discretion to the district court. *Osgood v. Disc. Auto Parts, LLC*, 981 F. Supp. 2d 1259, 1263 (S.D. Fla. 2013) (stating that the "standard for transfer under 28 U.S.C.

---

statements the documents contain and not to prove the truth of the documents' contents") (quoting authority omitted); *Universal Express, Inc. v. U.S. SEC*, 177 F. App'x 52, 53 (11th Cir. 2006) (courts may take judicial notice of public records, such as a complaint filed in another court).

Case No. 22-cv-20265-BLOOM/Otazo-Reyes

§ 1404(a) leaves much to the broad discretion of the trial court"); *see also Piper Aircraft Co.*, 454 U.S. at 236 (noting that "[d]istrict courts were given more discretion to transfer under § 1404(a) than they had to dismiss on grounds of *forum non conveniens*" (citation omitted)); *Motorola Mobility, Inc. v. Microsoft Corp.*, 804 F. Supp. 2d 1271, 1275 (S.D. Fla. 2011) ("The Court has broad discretion in determining whether these factors suggest that transfer is appropriate."). "[T]he burden is on the movant to establish that the suggested forum is more convenient." *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).

In determining the appropriateness of transfer, courts employ a two-step process. *See Osgood*, 981 F. Supp. 2d at 1263 (citing *Abbate v. Wells Fargo Bank, Nat'l Ass'n*, No. 09-62047-CIV, 2010 WL 3446878, at *4 (S.D. Fla. Aug. 31, 2010)). First, the district court is tasked with determining whether the action could have been pursued in the venue to which transfer is sought. *Id.* With regard to this first prong, an action "might have been brought" in any court that has subject-matter jurisdiction, where venue is proper, and where the defendant is amenable to process issuing out of the transferee court. *Windmere Corp. v. Remington Prods., Inc.*, 617 F. Supp. 8, 10 (S.D. Fla. 1985) (citing 15 C. Wright, A. Miller, and E. Cooper, *Federal Practice and Procedure* § 3845 (1976)).

Second, "courts assess whether convenience and the interest of justice require transfer to the requested forum." *Osgood*, 981 F. Supp. 2d at 1263 (citation omitted); *see also Abbate*, 2010 WL 3446878, at *3 ("The [Court of Appeals for the] The Eleventh Circuit has recognized that district courts have broad discretion in determining whether to transfer a case to another district for the convenience of the parties and witnesses, and in the interests of justice."). In analyzing this second prong, courts apply several factors weighing the various public and private interests. *See Motorola Mobility, Inc.*, 804 F. Supp. 2d at 1275-76.

5

Case No. 22-cv-20265-BLOOM/Otazo-Reyes

### III.    ANALYSIS

Defendant argues that transfer of this action to the Northern District of Texas is proper, contending that the public and private interest factors weigh in favor of transfer. ECF Nos. [15], [19]. Although Plaintiff opposes the Motion, the parties do not dispute that this action could have been pursued, and in fact *was* pursued, in the Northern District of Texas and venue would be proper in that district. *See* ECF Nos. [15] at 4, [18]; [2] *see also Osgood*, 981 F. Supp. 2d at 1263 (stating that the first part of the two-step analysis in determining the appropriateness of transfer involves assessing whether the action could have been pursued in the venue to which transfer is sought (citing *Abbate*, 2010 WL 3446878, at *4)). The Court agrees and easily finds that the action could have been pursued in the Northern District of Texas. Plaintiff already filed a similar suit involving the same underlying facts in Texas state court and was removed to the Northern District of Texas prior to its voluntary dismissal by Plaintiff. The parties litigated the claims in the Texas state and federal actions for nearly two years and that is the most persuasive ground supporting transfer. Adjudication of the present dispute by the court having an extensive familiarity with the parties, facts, and the claims will certainly enable an expeditious and efficient resolution to the litigation. Relevant here, Plaintiff was a resident of Miami at the time she chose to initiate suit in Texas in 2020.

Accordingly, the Court addresses "whether convenience and the interest of justice require transfer to the requested forum," *Osgood*, 981 F. Supp. 2d at 1263, and the Court's transfer analysis focuses on the weight of the public and private interest factors. Defendant, as the movant, bears the burden of demonstrating entitlement to transfer. *See In re Ricoh Corp.*, 870 F.2d at 573 ("[I]n

---

[2] *See Windmere Corp.*, 617 F. Supp. at 10 ("An action 'might have been brought' in a proposed transferee court if: (1) the court had jurisdiction over the subject matter of the action; (2) venue is proper there; and (3) the defendant is amenable to process issuing out of the transferee court.").

the usual motion for transfer under section 1404(a), the burden is on the movant to establish that

the suggested forum is more convenient.").

In analyzing whether a defendant has sufficiently demonstrated that transfer is appropriate,

a court considers the following private and public interest factors:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the
> relative ease of access to sources of proof; (3) the convenience of the parties; (4)
> the locus of operative facts; (5) the availability of process to compel the attendance
> of unwilling witnesses; (6) the relative means of the parties; (7) a forum's
> familiarity with the governing law; (8) the weight accorded a plaintiff's choice of
> forum; and (9) trial efficiency and the interests of justice, based on the totality of
> the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). "Ultimately, transfer can

only be granted where the balance of convenience of the parties strongly favors the defendant."

*Steifel Labs., Inc. v. Galderma Labs., Inc.*, 588 F. Supp. 2d 1336, 1339 (S.D. Fla. 2008) (citing

*Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996)).

### A. Private Interest Factors

Defendant argues that convenience of the parties and witnesses, the location of relevant

documents, and the relative ease of access to sources of proof support a transfer of this action. ECF

No. [15] at 6-7. Plaintiff responds that eight of the nine private interest factors weigh against

transfer of this action. *See generally* ECF No. [1]. The Court finds that consideration of the private

interest factors weighs in favor of transfer to the Northern District of Texas.

#### 1. The Convenience of the Witnesses

Defendant argues that the remaining depositions involve potential American Airlines flight

attendants and police officers who are "most logically residents of Dallas or Fort Worth, Texas[.]"

ECF Nos. [15] at 7, [19] at 5. Defendant asserts that "the DFW police officers that were purportedly

involved in escorting Plaintiff off the plane will almost certainly be critical witnesses in this

Case No. 22-cv-20265-BLOOM/Otazo-Reyes

matter." ECF No. [19] at 4. Defendant further contends that Plaintiff's Miami-based witnesses—
Avery Andon (Plaintiff's fiancé), Jeannie Etter (a Miami-based attorney who was on the Subject
Flight), and David Coulson (Etter's spouse and a Miami-based attorney who was on the Subject
Flight), *see* ECF No. [18] ¶ 13— have already been deposed in the Second State Court Action, so
they would not be inconvenienced by a transfer to the Northern District of Texas. ECF Nos. [15]
at 7.

Plaintiff quotes to *Osgood* and responds that "[t]he convenience of both the party and non-
party witnesses is probably considered the single most important factor in the analysis whether a
transfer should be granted." ECF No. [18] ¶ 7 (quoting 981 F. Supp. 2d at 1264). She also maintains
that "[w]hen weighing the convenience of the witnesses, a court does not merely tally the number
of witnesses who reside in the current forum in comparison to the number located in the proposed
transferee forum. Instead, the court must qualitatively evaluate the materiality of the testimony
that the witness may provide." *Id.* Lastly, Plaintiff contends that the Court should consider whether
the witnesses are subject to the subpoena power of the court. *Id.* She argues this factor weighs
against transfer because the testimony of George Flores ("Flores"), a Miami resident and
individual who was an eyewitness to the alleged tortious conduct committed by Roy, is essential
to proving her case in chief. ECF No. [18] ¶ 8. Most importantly, Plaintiff notes that Flores failed
to attend his deposition in Miami and Plaintiff will need to rely on the Court's subpoena power to
compel Flores' attendance in the future. *Id.*

The Court notes that the deposition testimony of each of the witnesses, with the exceptions
of Flores and Roy, has already been taken in the Texas action. As to Flores, neither party sought
relief from the court after Flores failed to appear for his deposition last year in Miami so the Court
gives little weight to the claim that Plaintiff may rely in the future on the Court's subpoena power.

8

As to Roy, he is an employee of American and where witnesses are employees of a party, their convenience is entitled to less weight because the respective party will be able to compel their attendance and testimony at trial. *Nat'l Tr. Ins. Co. v. Pa. Nat'l Mut. Cas. Ins. Co.*, 223 F. Supp. 3d 1236, 1243 (M.D. Fla. 2016); *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010) (noting that this factor's "significance is diminished when the witnesses ... are employees of a party."); *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1132 (C.D. Cal. 2009) ("The court accords less weight to the inconvenience of *party* witnesses, however, as they can be compelled to testify regardless of the forum in which the lawsuit is ultimately litigated."); *Mason v. Smithkline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1362 (S.D. Fla. 2001) ("Thus, transfer may be denied when the witnesses, although in another district, are employees of a party and their presence can be obtained by that party."). Indeed, "it is not so much the convenience of the witnesses but the possibility of having their testimony at trial that is important." *Dale v. United States*, 846 F. Supp. 2d 1256, 1257-58 (M.D. Fla. 2012) (quoting *Mason*, 146 F. Supp. 2d at 1361). The other witnesses Defendant identifies are also employees of Defendant American Airlines. As to the DFW police officers, Defendant has not identified any specific individual who would testify but for the location of the forum, rather than merely potential witnesses. Upon consideration, the Court is unpersuaded that this factor weighs in favor of transfer.

### 2. *Location of Relevant Documents and the Relative Ease of Access to Sources of Proof*

Defendant argues that this factor weighs in favor of transfer because its principal place of business, the airport where the Subject Flight landed, and the police department where Plaintiff was detained are all located within the Northern District of Texas. ECF No. [15] at 7. Plaintiff responds that this factor weighs against transfer because the witnesses who have been deposed in

the Second State Court Action are domiciled or work in Miami, Florida. ECF No. [18] ¶ 10. Yet, Plaintiff concedes that the location of documents is a neutral factor because documents and sources of proof can be exchanged via electronic means. *Id.*

Defendant has not established that the location of Defendant's principal place of business, the airport where the Subject Flight landed, and the police department where Plaintiff was detained are sources of proof in this case. Further, Defendant has not alleged that a jury view is needed of any of those locations during trial or that any documents or evidence related to the case that may be located at these sites are not available for viewing or accessing outside of the Northern District of Texas. Moreover, the location of relevant documents warrants little weight because documents and sources of proof can be exchanged via electronic means. *Mason*, 146 F. Supp. 2d at 1364 ("[I]n light of technological advancements in document imaging, management, and retrieval, it is unlikely that document production will be unduly burdensome if transfer is denied."). Accordingly, this factor is neutral and does not weigh toward or against transfer of this action.

### 3. *The Convenience of the Parties*

Defendant argues that this factor weighs in favor transfer because Plaintiff has already voluntarily engaged in litigation against Defendant and Roy in Texas so she cannot now claim it is inconvenient for her to litigate in that forum. ECF No. [15] at 6. Further, Defendant argues that it would be more convenient for Defendant to litigate this case in the Northern District of Texas because its principal place of business is within the territorial boundaries of the Northern District of Texas. *Id.* Plaintiff responds that she is a resident of Florida, four witnesses are Florida residents, and that "both Courts are equally familiar with the applicable law." ECF No. [18] ¶ 15.

Upon consideration, the Court finds that Plaintiff's decision to file her action in Texas and to proceed with significant discovery, including her own videotaped deposition and those of three

eyewitnesses who also live in Miami, seriously undermines her claim that she will be inconvenienced. However, Defendant has failed to show how transfer would be more convenient, as opposed to merely shifting the convenience to Defendant. As such, this factor does not weigh in favor of either party.

### 4. *The Locus of Operative Facts*

Defendant correctly points out that the claimed tortious acts were committed either in mid-flight between MIA and DFW, or at DFW when Plaintiff was escorted off the flight and detained by DFW police. ECF No. [19] at 3. Plaintiff responds that the locus of operative facts weighs against transfer because she requested a blanket while boarding the plane in Florida, Plaintiff's fiancé searched for a blanket as the Subject Flight was boarding at Miami International Airport in Florida, and she was given a blanket approximately 30 minutes into the Subject Flight. ECF No. [18] at ¶ 11. Yet, Plaintiff concedes that the incident giving rise to this case occurred somewhere in the air between Miami and DFW International Airport. *Id.*; ECF No. [19] at 3. Defendant replies that the locus of operative facts weighs in favor of transfer because as "between Texas and Florida, more of the alleged critical events giving rise to Plaintiff's claims occurred in Texas." *Id.* at 4. Moreover, the tortious encounter at issue commenced when Plaintiff was woken up by a flight attendant about an hour and thirty minutes into the Subject Flight which would place the aircraft either over the Gulf of Mexico or the airspace between Louisiana. *Id.* at 3. Further, the events that support Plaintiff's false imprisonment claim occurred in Dallas, Texas. *Id.* at 4.

"The locus of operative facts refers to the specific action or omissions that gave rise to the cause of action." *Hagin v. TA Operating, LLC*, 2014 WL 1385709, *3 (S.D. Fla. Apr. 9, 2014) (quoting authority omitted). Here, the operative facts span between both Florida and Texas. The events underlying the tortious acts at issue occurred mid-flight between Florida and Texas and in

11

Texas when Plaintiff was escorted off the Subject Flight and detained by DFW police. The fact that Plaintiff boarded the flight is merely incidental. Because the alleged tortious activity occurred mid-flight spans between Texas and Florida, there is no significant connection to either Texas or Florida. Plaintiff's detention and questioning in DFW, however, demonstrates that the connection to Texas is stronger than the connection to Florida. Accordingly, this factor weighs in favor of transfer.

### 5. The Availability of Process to Compel the Attendance of Unwilling Witnesses

The availability of process to compel the attendance of unwilling witnesses does not weigh in favor of transfer. Defendant has failed to identify any unwilling witnesses who could not be compelled to attend a trial in Miami but who would otherwise attend in Texas. This factor offers Defendant no support. Thus, this factor does not tilt in favor of transfer. *See, e.g.*, *Perlman v. Delisfort-Theodule*, No. 09-80480-CIV, 2010 WL 11504751, at *2 (S.D. Fla. Mar. 30, 2010), *aff'd*, 451 F. App'x 846 (11th Cir. 2012) (denying transfer where movant "has identified no witnesses who would be unwilling to travel to Florida to testify or who could not be compelled to do so."); *Legg v. Quicken Loans, Inc.*, No. 14-61116-CIV, 2015 WL 13753742, at *3 (S.D. Fla. Mar. 6, 2015) (determining that the fifth factor "does not weigh in either party's favor at this early stage" where "[n]either party has identified any witnesses that are potentially unwilling to participate at trial and thus the availability of process to compel the attendance of unwilling witnesses is a non-issue"); *Roy v. Perdue Farms, Inc.*, No. 613CV1656ORL36KRS, 2014 WL 12783276, at *2 (M.D. Fla. June 9, 2014) (finding that the convenience of witnesses and availability of process to compel attendance did not weigh in favor of transfer where defendant did "not identify any non-party witnesses who are unwilling to testify"); *Figueroa v. Sharper Image Corp.*, No. 05-21251-CIV, 2005 WL 8154985, at *3 (S.D. Fla. Dec. 13, 2005) (noting that transfer

may be denied "where the movant does not show that the witnesses would be unwilling to testify")
(quoting *Mason,* 146 F. Supp. 2d at 1361-620). Plaintiff has identified one eyewitness, Flores, a
resident of Miami, who has already failed to appear for his deposition. However, as stated, Plaintiff
has not sought the assistance of the Court to compel that witness's appearance. The Court notes
that the court provided letters rogatory for each of the eyewitnesses, *see, e.g.,* ECF No. [15-3] at
280, and the requested subpoenas were issued by the clerk of the Eleventh Judicial Circuit in
Miami. *Id*. at 228. However, following the nonappearance of Flores in Miami in September 2021,
no effort was made to seek the court's assistance. Accordingly, the Court finds this factor is neutral.

### 6. The Relative Means of The Parties

Regarding the relative means of the parties, the Court finds that this factor is neutral.
Defendant does not address this factor in its Motion. *See generally* ECF No. [15]. Plaintiff argues
that Defendant has more means to litigate this action in Florida than Plaintiff has to litigate the
action in Texas. ECF No. [18] ¶ 16. Plaintiff is an individual whereas Defendant is a corporation
and "one of the largest private employers in Miami-Dade County with an annual payroll that
exceeds $415 million and 115,000 jobs are created through ancillary businesses." ECF No. [18-5]
at 1.[3] This factor does not weigh in favor of either party. The Court acknowledges that Defendant
is a large corporation and Plaintiff is an individual. But by filing and litigating the previous action
in Texas, Plaintiff established that she has the relative means to litigate this case in the Northern
District of Texas in the event of transfer. As such, both parties have the means to litigate this case
in the event of transfer.

---

[3] Defendant does not dispute Plaintiff's Exhibit E, a document titled *American's Miami Hub* and the source
of this quote, or the facts contained therein.

### 7. Forum's Familiarity with the Governing Law

Defendant addresses this factor in the context of the public interest factor which considers the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action. ECF No. [15] at 10. Defendant argues that Texas law should be applied to the substantive matters in this suit and the Northern District of Texas is the proper forum for this suit. *Id.* Plaintiff does not address the forum's familiarity with the governing law. *See generally* ECF No. [15].

The Court finds that this factor weighs in favor of transfer. While this Court need not determine the law of which state governs the suit at this time, both the Southern District of Florida and the Northern District of Texas are equally as equipped to apply the laws of Texas or Florida. *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 67–68 (2013) ("And, in any event, federal judges routinely apply the law of a State other than the State in which they sit. We are not aware of any exceptionally arcane features of Texas contract law that are likely to defy comprehension by a federal judge sitting in Virginia."). However, the court records reflect that Texas law has already been applied to certain pretrial matters as the Texas Court held three separate hearings and decided pretrial discovery matters, including a protective order, motions to compel, and release of Plaintiff's medical records. See ECF No. [15-3] at 370.

### 8. Weight Accorded to a Plaintiff's Choice of Forum

Defendant argues that because Plaintiff's initial choice of forum was Texas, Plaintiff's choice of forum in Florida is entitled to less consideration because the tortious acts did not occur within this forum. ECF No. [15] at 6. Plaintiff responds that her choice of forum should be given considerable deference because significant facts giving rise to this case have a material relation to this forum. ECF No. [18] ¶ 18. Defendant replies that Plaintiff's choice of forum should be

Case No. 22-cv-20265-BLOOM/Otazo-Reyes

accorded less deference because Plaintiff's decision to first file suit in Texas and now file the instant suit in the Southern District of Florida indicates that Plaintiff is forum shopping. ECF No. [19] at 2-3.

Traditionally, a plaintiff's choice of forum is accorded considerable deference and unless the Plaintiff's choice of forum is clearly outweighed by other considerations, it should not be disturbed. *Robinson v. Giramarco & Bill, P.C.*, 74 F.3d 254 (11th Cir. 1996). However, "where the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration." *Motorola Mobility, Inc.*, 804 F. Supp. 2d at 1276 (quoting *Windmere*, 617 F. Supp. at 10). "Furthermore, plaintiff's choice of a forum warrants less deference if 'there is any indication that plaintiff's choice of forum is the result of forum shopping.'" *Combs v. Fla. Dep't of Corr.*, 461 F. Supp. 3d 1203, 1214 (N.D. Fla. 2020) (quoting authority omitted). Defendant contends that "Plaintiff's brazen and shameless forum efforts to forum shop should not be encouraged," ECF No. [19] at 5, yet Defendant offers no reason why the Court should accept this conclusion. As such, Defendant's citation to *Gillig v. Nike, Inc.*, No. 08-22845-CIV, 2008 WL 11429501, at *5 (S.D. Fla. Dec. 16, 2008) is inapposite. There, the plaintiff sought to transfer a case from the venue he initially selected. The court found there was forum shopping because the plaintiff attempted to avoid adverse rulings when he opposed transfer of the case to the original forum where a related case has already been litigated and adverse rulings were made against him in the original forum. Here, Defendant offers no basis to allow the Court to find forum shopping on Plaintiff's part.

However, Defendant is correct that, critically, Plaintiff's *initial* choice of forum was Texas, not Florida. After litigating the case in Texas for over one year, and while that action was still pending, Plaintiff filed this case in Florida's state court. Moreover, Plaintiff's choice of forum is

entitled to less consideration because the operative facts did not occur in Florida. In contrast to Plaintiff's contention, boarding the flight in Miami or requesting a blanket once on the flight are merely incidental to the claimed tortious conduct. Accordingly, Plaintiff's choice to bring this action in Florida is not afforded much deference.

### B. Public Interest Factors and the Interests of Justice

Next, the Court considers, based on the totality of the circumstances, the interests of justice and several other public interest factors, that include:

> the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness in burdening citizens in an unrelated forum with jury duty.

*Trace-Wilco, Inc.*, 2009 WL 455432, at *2 (quoting *Piper Aircraft*, 454 U.S. at 258 n.6).

Defendant argues that all the public interest factors weigh in favor of transfer. Moreover, Defendant contends that administrative difficulties flowing from court congestion weigh in favor of transfer because the Southern District of Florida has one of the busiest dockets in the country. ECF No. [15] at 9. Defendant cites statistics that demonstrate the United States District Court for the Northern District of Texas had fewer filings in the twelve-month period ending June 30, 2021, than in the United States District Court for the Southern District of Florida. *Id.* However, as recognized by Defendant, "this factor generally does not warrant significant consideration in the *forum non conveniens* analysis, and the Court does not accord it much weight." *Beaman v. Maco Caribe, Inc.*, 790 F. Supp. 2d 1371, 1379–80 (S.D. Fla. 2011). Defendant also contends that Texas has an interest in having localized controversies decided at home and having the trial of a diversity case in a forum that is at home with the law that must govern the action weighs in favor of transfer. ECF No. [15] at 9-10. Lastly, Defendant argues that it is unfair to burden citizens of the Southern

Case No. 22-cv-20265-BLOOM/Otazo-Reyes

District of Florida with jury duty because this dispute has no relation to Florida. *Id.* at 11. Plaintiff does not address the public interest factors and generally argues that trial efficiency and the interest of justice weigh in favor of the case remaining in the Southern District of Florida because the material witnesses reside in this district and trial in Miami will be more efficient. ECF No. [18].

The Court finds that the public interest factors weigh heavily in favor of transfer. While this case has a relation to the Southern District of Florida, namely Plaintiff is a Florida resident, its relation to the Northern District of Texas is stronger, and the Texas District Court Action was previously pending and involved the same underlying events at issue in this case.[4] In her Response, Plaintiff represents that she has requested dismissal of the Texas action and it is no longer pending. As such, Defendant's request to consolidate the Florida case with the Texas case would not be appropriate. However, given the Texas court's familiarity with the case, judicial economy warrants litigating the case in Texas. The record plainly demonstrates that significant judicial resources and substantial time and energy have been expended in the Texas Second State Court Action and the Texas District Court Action. Following a balancing of the public and private interests, the Court finds that it weighs heavily in favor of transferring the case to the Northern Texas, Ft. Worth

---

[4] Defendant's argument that this action should be transferred because the substantially similar related action pending in Texas was filed first, is not a proper consideration in the transfer analysis under 28 U.S.C. § 1404(a). Defendant cites to *Manuel v. Convergys Corp.,* 430 F.3d 1132, 1135 (11th Cir. 2005) and *In re Checking Acct. Overdraft Litig.*, 859 F. Supp. 2d 1313, 1325 (S.D. Fla. 2012) which discuss the federal court's power under the "first to file rule." "[T]he first to file rule not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated." *In re Checking Acct. Overdraft Litig.*, 859 F. Supp. 2d at 1325 (internal quotations and citing authority omitted). Defendant did not seek a dismissal, stay or transfer of this case pursuant to "first to file rule." As such, Defendant's argument that "[w]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule[]" is not relevant to the Court's present analysis. *Manuel*, 430 F.3d at 1135.

17

Division and overcomes any presumption in favor of Plaintiff's now chosen forum. Accordingly, the Motion is granted.

**IV.   CONCLUSION**

It is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion, **ECF No. [15]**, is **GRANTED**.

2. The case is **TRANSFERRED** to the U.S. District Court for the Northern District of Texas, Ft. Worth Division.

3. Any pending motions are DENIED AS MOOT and scheduled hearings are **CANCELED.**

4. The Clerk of the Court is instructed to **CLOSE** the case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on June 8, 2022.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

18